## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| FATIMA VALDEZ and HAROLD ROBERTSON II, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> Target Corporation, <br><br> Defendant. | Case File No. 23-cv-1681 <br><br><br> **CLASS ACTION COMPLAINT** <br><br><br> <u>JURY TRIAL DEMANDED</u> |

Plaintiff Fatima Valdez ("Ms. Valdez") and Plaintiff Harold Robertson II ("Mr. Robertson") (collectively "Plaintiffs"), by and through their attorneys, bring this class action against Target Corporation ("Defendant" or "Target"), for its refusal to reimburse customers for the remaining balance on their gift cards. By so doing, Target violates the laws of many states and its own stated policies regarding its gift cards. Plaintiffs make the following allegations based upon information and belief and upon investigation by their counsel, except as to allegations pertaining to themselves, which they allege based upon personal knowledge.

### <u>PARTIES</u>

1.     Plaintiff Fatima Valdez is a resident of California and lives in Los Angeles County.

2.     Plaintiff Harold Robertson II is a resident of California and lives in Los Angeles County.

3.     Defendant Target Corporation is a retailer with locations across the United States. It is incorporated in the State of Minnesota and its principal place of business and headquarters are located at 1000 Nicollet Mall, Minneapolis, Minnesota 55403.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because the estimated number of class members exceeds 100, the aggregated amount in controversy exceeds $5,000,000 (not including interest, fees, and costs), and at least one class member holds diversity of citizenship with the Defendant.

5.     This Court has personal jurisdiction over the Defendant because its principal place of business is located within this district.

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business is located within this district and a substantial portion of the events giving rise to this cause of action occurred within this district.

## FACTUAL ALLEGATIONS

7.     Target, like most other national retailers, offers gift cards for sale for use toward purchases in its retail stores and on its website.

8.     Consumers purchase gift cards and add value to them at Defendant's retail stores or on its website.

9.     After using the gift card for purchases at Target's stores or on its website, it is common that some value will be left remaining on the card. This value may be small enough that there is nothing of interest for the customer to purchase from Target's inventory and the customer chooses instead to redeem the remaining balance for cash.

10.     Gift cards are ubiquitous in the U.S. economy, with over half of all Americans reporting it as the most requested gift item during holidays. As of December 2022, it was estimated that $21 billion worth of gift cards remain unused by American consumers.[1]

11.     The unused or remaining balances on gift cards are ultimately claimed by the issuing companies as revenue, enriching the issuing company at the expense of the consumer. Revenues from unused gift cards can be substantial. For example, Starbucks reportedly "claimed $181 million in revenue" from money on gift cards and loyalty accounts that customers didn't spend in fiscal year 2021."[2]

12.     Target recognizes substantial revenues from the sale of gift cards. In 2022, Target recognized nearly $900 million in revenue from gift cards.[3]



| Gift Card Liability Activity | | | | | |
|---|---|---|---|---|---|
| (millions) | January 29, 2022 | Gift Cards Issued During Current Period But Not Redeemed [b] | Revenue Recognized From Beginning Liability | | January 28, 2023 |
| Gift card liability [a] | $    1,202 | $    927 | $    (889) | $ | 1,240 |

[a]     Included in Accrued and Other Current Liabilities.
[b]     Net of estimated breakage.

[1] Carter Evans, *Report: Americans hold onto $21 billion in unused gift cards*, CBS News (December 22, 2022), available at https://www.cbsnews.com/news/unused-gift-cards-americans/ (last accessed May 30, 2023).

[2] PYMNTS, *Starbucks Claims $181M in Revenue From Unused Gift Cards and Loyalty Credits*, PYMNTS (November 16, 2022), available at https://www.pymnts.com/earnings/2022/starbucks-claims-181m-in-revenue-from-unused-gift-cards-and-loyalty-credits/ (last accessed May 30, 2023).

[3] Target Corporation, *2023 Form 10-K*, Target Corporation (March 8, 2023) on page 44.

And in 2021, Target recognized $736 million in revenue from gift cards.[4]

**Gift Card Liability Activity**

| (millions) | January 30, 2021 | Gift Cards Issued During Current Period But Not Redeemed [b] | Revenue Recognized From Beginning Liability | January 29, 2022 |
|---|---|---|---|---|
| Gift card liability [a] | $    1,035 | $       903 | $      (736) | $    1,202 |

[a]    Included in Accrued and Other Current Liabilities.
[b]    Net of estimated breakage.

Significantly, according to Target's financial statements, in both 2021 and 2022, over $900 million worth of gift cards issued during each year had not been redeemed.

13.    Target further acknowledges that a portion of its gift cards will never be redeemed:

> "Revenue from Target gift card sales is recognized upon gift card redemption, which is typically within one year of issuance. Our gift cards do not expire. Based on historical redemption rates, a small and relatively stable percentage of gift cards will never be redeemed, referred to as "breakage." Estimated breakage revenue is recognized over time in proportion to actual gift card redemptions."[5]

14.    According to Target's own policies regarding its gift cards, "Target GiftCards cannot be redeemed for cash or credit **except where required by law**."[6]

15.    Contrary to Target's representation and its own stated policy that gift cards can be redeemed for cash where state law requires that option, Target makes its gift cards

---

[4] Target Corporation, *2021 Form 10-K*, Target Corporation (March 9, 2022) on page 45.
[5] Target Corporation, *2023 Form 10-K*, Target Corporation (March 8, 2023) on page 43.
[6] *Target Giftcards*, Target.com, available at https://help.target.com/help/subcategoryarticle?childcat=Target+GiftCards&parentcat=Gift+Cards (last accessed April 13, 2023).

completely non-refundable and denies customer refunds for the remaining value even when state laws require it to do so.

16.    Many states and territories have laws that require retailers to reimburse consumers for the remaining balances on their gift cards if the balance falls below a certain threshold amount. For example, California's Cal. Civ. Code § 1749.5(b)(2) provides that, "[A]ny gift certificate with a cash value of less than ten dollars ($10) is redeemable in cash for its cash value."[7] Target violates the laws of these states by refusing to reimburse consumers in cash for the remaining balances on their gift cards.

17.    Such laws were enacted because of the millions of dollars lost by consumers with small balance gift cards. For example, in support of Connecticut's gift card refund law, the Connecticut Citizens Actions Group reported that "[i]n 2015 alone, close to $1,000,000,000 went unclaimed on these gift cards," and that such a law "goes beyond good customer service and helps to provide millions of dollars lost to the customer when they are not allowed to withdraw from these low value gift cards."[8]

18.    Similarly, in support of Hawaii's gift card refund law, Representative Scot Matayoshi of the Hawaii State Legislature explained that "[m]any people just throw away gift cards with a negligible balance because they feel like it's not worth their time to redeem and would not spend more than the remaining amount to purchase anything. This is supported by the statistics issued by the Consumer Reports, which reported that billions of dollars are left unspent and unredeemed on gift certificates in the United States each year.

---

[7] Under Cal. Civ. Code § 1749.45, a gift card is considered a "gift certificate."
[8] https://www.cga.ct.gov/2016/JFR/h/2016HB-05564-R00BA-JFR.htm

This bill will allow some of the money to stay in Hawaii's economy and ensure that consumers receive the full benefit of a gift certificate."[9]

19.    Target has sold millions of dollars' worth of these cards to consumers and has refused to redeem the remaining balances for cash even where statutorily required to make such redemption. By so doing, Target has, upon information and belief, illegally retained millions of dollars of customer money and continues to do so.

20.    Target has made no indication that it will cease sale or issue of its gift cards. Likewise, Target has made no indications that it plans to change any of its policies regarding its gift card redemptions. As such, Target's violation of the state laws and resulting consumer harm is ongoing and will continue for the foreseeable future.

## FACTS SPECIFIC TO PLAINTIFFS

**Plaintiff Fatima Valdez**

21.    Plaintiff Fatima Valdez purchased four Target gift cards from the South Gate Target store in Los Angeles in or around December 2022.

22.    Throughout December and January, Ms. Valdez made several purchases from the South Gate Target store using these gift cards.

23.    By February 2023, the remaining balances on Ms. Valdez' gift cards were $8.33, $9.60, $7.52, and $6.45 respectively.

---

[9] https://www.khon2.com/local-news/new-law-requires-businesses-to-refund-gift-cards-with-less-than-5-remaining/

24.     In February 2023, Ms. Valdez took the gift cards back to the South Gate Target location and asked a customer service agent to reimburse her in cash for the remaining balances.

25.     The agent and Target store refused Ms. Valdez' request for a cash redemption, claiming that it was against Target policy.

26.     Ms. Valdez was, and remains, a frequent customer at Target stores. Ms. Valdez will continue to make purchases from Target, including gift cards, in the future.

**Plaintiff Harold Robertson II**

27.     Plaintiff Harold Robertson II purchased a Target gift card from the Duarte, California Target location in early 2023 and used the gift card to make several purchases.

28.     By March 2023, the remaining balance on Mr. Robertson's gift card was $5.47.

29.     In March 2023, Mr. Robertson took his gift card to the Duarte, California Target store and, not finding anything desirable in Target's inventory that was purchasable for the price remaining on his card, he requested the balance in cash.

30.     The agent and store refused Mr. Robertson's request for a cash redemption, claiming that it was against Target policy. He subsequently disposed of the card on the way out of the store.

31.     Mr. Robertson is a frequent customer at Target and he is highly likely to shop at Target stores in the future. Mr. Robertson also anticipates purchasing Target's gift cards in the future.

## CLASS ALLEGATIONS

32.    Plaintiffs bring this action pursuant to the provisions of Rules 23(a), 23(b)(2), 23(b)(3), and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and the following proposed classes:

**The Multistate Class (the "Multistate Class")**
All individuals who purchased Target's gift cards in California, Connecticut, Hawaii, Maine, New Jersey, Rhode Island, Vermont, and Washington.

**The California Class (the "California Class")**

All individuals who purchased Target's gift cards in the State of California.

**The Connecticut Class (the "Connecticut Class")**

All individuals who purchased Target's gift cards in the State of Connecticut.

**The Hawaii Class (the "Hawaii Class")**

All individuals who purchased Target's gift cards in the State of Hawaii.

**The Maine Class (the "Maine Class")**

All individuals who purchased Target's gift cards in the State of Maine.

**The New Jersey Class (the "New Jersey Class")**

All individuals who purchased Target's gift cards in the State of New Jersey.

**The Rhode Island Class (the "Rhode Island Class")**

All individuals who purchased Target's gift cards in the State of Rhode Island.

**The Vermont Class (the "Vermont Class")**

All individuals who purchased Target's gift cards in the State of Vermont.

**The Washington Class (the "Washington Class")**

All individuals who purchased Target's gift cards in the State of Washington.

The state classes alleged above shall hereinafter be referred to collectively as the "State Classes," and together with the Multistate Class, shall be referred to collectively as the "Class" or "Classes."

33.     Excluded from the Classes are Defendant, its agents, affiliates, parents, subsidiaries, any entities in which Defendant has a controlling interest, its officers or directors, any successors or assigns, and any Judge who adjudicates this case, including their staff and immediate family.

34.     Plaintiffs reserve the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

35.     <u>Numerosity</u>: Upon information and belief, the Classes are so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that the Classes comprise millions of individuals based on the revenue reported in Target's financial statements. The members of the Classes will be identifiable through information and records in Defendant's possession, custody, and control.

36.     <u>Commonality</u>, Fed. R. Civ. P. 23(a)(2) and (b)(3). Questions of law and fact common to each Class exist and predominate over any questions affecting only individual Class Members. These include, for example:

        a.     Whether Defendant violated its own published policies regarding its gift cards.

b.     Whether Defendant implemented a policy to deny cash redemptions of gift cards.

c.     Whether Defendant violated the statutes referenced herein;

d.     Whether Plaintiffs and class members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct;

37.     <u>Typicality</u>: All of Plaintiffs' claims are typical of the claims of the Classes since Target wrongfully denied Plaintiffs and class members cash refunds for the balance remaining on their cards. Plaintiffs and class members sustained damages as a result of Defendant's uniform wrongful conduct.

38.     <u>Adequacy</u>: Plaintiffs are adequate representatives because their interests do not materially or irreconcilably conflict with the interests of the Classes they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the Classes. Neither Plaintiffs nor their counsel have any interests that are antagonistic to the interests of other members of the Classes.

39.     <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and the Classes. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Classes individually to effectively redress the wrongs done to them. Even if the members of the

Class could afford such individual litigation, the court system could not. Individualized litigation presents the potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified based on, inter alia, Defendant's records and databases.

### COUNT I
### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code § 17200 *et seq.*
### (On Behalf of the California Class)

40. Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

41. This Count is brought on behalf of the California Class.

42. California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200 *et seq.*

43. Cal. Civ. Code § 1749.5 mandates that any gift card with a remaining balance of less than $10 is redeemable in cash for its cash value upon request.

44. Target violates Cal. Civ. Code § 1749.5 by engaging in a routine practice of refusing cash redemptions for its gift cards even when they fall below the threshold balance of $10.

45.    Defendant violated, and continues to violate, the "unlawful" prong of the UCL by refusing to refund consumers for the remaining cash balances on their gift cards as required by Cal. Civ. Code § 1749.5.

46.    Defendant's conduct violated, and continues to violate, the "unfair" prong of the UCL because Defendant's conduct is not motivated by any legitimate business or economic needs. And to the extent that such a need exists, Defendant's conduct does not outweigh any potential benefits attributable to such conduct and there are reasonable alternatives to further Defendant's legitimate business interests other than Defendant's conduct described herein.

47.    The acts, omissions, and conduct of Defendant were and are controlled, directed, and emanated from its Minnesota headquarters and these acts constitute "business practices" within the meaning of the UCL.

48.    As result of Defendant's violations of the UCL, Plaintiffs and members of the California Class have suffered, and will continue to suffer from Defendant's unfair, unlawful, and fraudulent practices, and thereby have suffered and will continue to suffer actual damages.

49.    The injuries suffered by Plaintiffs and members of the California Class are not greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and Class members should have reasonably avoided.

50.    Plaintiffs and members of the California Class seek to enjoin Defendant's further unlawful and unfair acts or practices, to obtain restitutionary disgorgement of all

monies and revenues generated as a result of such practices, and all other relief allowed under California Bus. & Prof. Code § 17200 *et seq.*

<u>COUNT II</u>
**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**Cal. Civ. Code §§ 1750 *et seq.***
**(On Behalf of the California Class)**

51.     Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

52.     The California Consumer Legal Remedies Act ("CLRA") makes it unlawful for businesses to engage in unfair or misleading acts when selling goods or services to consumers.

53.     Defendant committed, and continues to commit, an unfair act under the CLRA when it violated the provisions of the CA Civ Code § 1749.5 and the California Unfair Competition Law.

54.     Defendant's aforementioned unfair act transpires as part of a commercial transaction between it and the California Class when members of the California Class purchase Target's gift cards.

55.     Defendant commits the aforementioned unfair acts *intentionally* and not as a result of any bona fide errors and Defendant continues to refuse to make any attempts to correct or remedy its behavior.

56.     On or about June 5, 2023, Plaintiffs provided Defendant with notice of its violations of the CLRA pursuant to Cal. Civ. Code § 1782(a), and thus seek only injunctive relief at this time. After the 30-day notice period elapses, Plaintiffs intend to amend this

Complaint to seek monetary damages, including actual, restitutionary, and punitive damages. Plaintiffs and the California Class members' injuries were proximately caused by Defendant's unfair business practices. Therefore, Plaintiffs and the California Class members will seek all relief available under the CLRA.

## COUNT III
### VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT
### Conn. Gen. Stat. § 735a *et seq.*
### (On Behalf of the Connecticut Class)

57.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

58.    This Count is brought on behalf of the Connecticut Class.

59.    The Connecticut Unfair Trade Practices Act makes it illegal for a business involved in commerce to engage in unfair, deceptive, or fraudulent practices in the sale of goods or the provision of services.

60.    Conn. Gen. Stat. § 42-461 requires businesses to refund consumers for the remaining balance on the gift cards if it falls below the threshold amount of $3.

61.    Target makes it a routine practice in Connecticut to refuse such refunds even when the balances on the gift cards fall below the threshold amount, thereby engaging in an unlawful practice under Conn. Gen. Stat. § 42-461.

62.    By engaging in a trade practice unlawful under Connecticut law, Target engaged in, and continues to engage in, an unfair method of competition and violates Conn. Gen. Stat. § 735a.

63.    The Connecticut Class suffered damages, and continues to suffer damages, as a direct result of Defendant's conduct by being denied access, in cash, to the remaining balance on the gift cards.

64.    The members of the Connecticut Class are entitled to equitable relief, compensatory damages, costs and reasonable attorneys' fees, and other relief as provided by Conn. Gen. Stat. § 42-110g(d).

65.    The members of the Connecticut Class are also entitled to punitive damages because Defendant's conduct reveals a reckless indifference to the rights of others and/or an intentional and wanton violation of those rights.

66.    Pursuant to Conn. Gen. Stat. § 735a, 42-110g(c), Plaintiffs shall mail a copy of this complaint to the Connecticut Attorney General and the Connecticut Commissioner of Consumer Protection.

**COUNT IV**
**VIOLATION OF THE HAWAII UNFAIR COMPETITION LAW**
**Haw. Rev. Stat. 480-2 *et seq.***
**(On Behalf of the Hawaii Class)**

67.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

68.    This Count is brought on behalf of the Hawaii Class.

69.    The Hawaii Unfair Competition Law, Haw. Rev. Stat. § 480-2, prohibits unfair methods of competition and unfair practices in the conduct of any trade or commerce.

70.    Haw. Rev. Stat. § 481B-13(c) requires businesses to refund consumers for the remaining balance on the gift cards if it falls below the threshold amount of $5.

71.    Haw. Rev. Stat. § 481B-13(e) provides that any violation of the provisions of § 481B-13 constitutes a violation of Haw. Rev. Stat. § 480-2.

72.    Target makes it a routine practice in Hawaii to refuse such refunds even when the balance on the gift cards falls below the threshold amount, thereby violating HI Rev. Stat. § 481B-13(c). Consequently, Target is also in violation of the Hawaii Unfair Competition Law.

73.    The members of the Hawaii Class have suffered, and continue to suffer, damages as a direct result of Target's conduct since they are denied access, in cash, for the remaining balance on their gift cards.

74.    Under Haw. Rev. Stat. § 480-13, Plaintiffs and Hawaii Class members are seeking injunctive relief, preventing Defendant from continuing to engage in the wrongful acts and unfair and unlawful business practices alleged herein, and compensation for all damages they have suffered and continue to suffer. Plaintiffs and the members of the Hawaii Class also seek attorneys' fees and costs and all other remedies this Court deems proper pursuant to H.R.S. § 481A-4.

### COUNT V
### VIOLATION OF THE MAINE UNFAIR TRADE PRACTICES ACT
### Me. Rev. Stat. tit. 5, § 206 *et seq.*
### (On Behalf of the Maine Class)

75.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

76.     This Count is brought on behalf of the Maine Class.

77.     The Maine Unfair Trade Practices Act, Me. Rev. Stat. tit. 5, § 207, prohibits unfair methods of competition and unfair practices.

78.     Me. Rev. Stat. tit. 33, § 2067(6) requires businesses to refund consumers for the remaining balance on gift cards if they fall below the threshold amount of $5.

79.     Despite this mandate under Maine law, Defendant makes it a routine practice in Maine to refuse such refunds even when the balance on the gift cards falls below the threshold amount, thereby engaging in an unlawful practice under the laws of Maine. By engaging in a trade practice unlawful under Maine law, Target engaged in an unfair method of competition.

80.     As a result of Target's unlawful and unfair business practices, members of the Maine Class were damaged, and continue to be damaged, by being denied access in cash to the remaining balance on their gift cards.

81.     On or about June 5, 2023, Plaintiffs provided Defendant with notice of its violations of the Maine Unfair Trade Practices Act pursuant to Me. Rev. Stat. tit. 5, § 213(1-A), and thus seek only injunctive relief in the form of an injunction and restitutionary disgorgement at this time. After the 30-day notice period elapses, Plaintiffs intend to amend this Complaint to seek monetary damages, including actual, restitutionary, and punitive damages.

## COUNT VI
## VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
### N.J.S.A. §§56:8-1, *et seq.*
### (On Behalf of the New Jersey Class)

82.     Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

83.     This Count is brought on behalf of the New Jersey Class.

84.     The New Jersey Consumer Fraud Act makes it illegal for a business involved in commerce to engage in unconscionable trade practices.

85.     Although the Consumer Fraud Act does not define unconscionable commercial practices, the New Jersey Supreme Court has interpreted the word to mean, "[a]n amorphous concept obviously designed to establish a broad business ethic," and that unconscionability in commercial dealings implies a "lack of good faith, honesty in fact and observance of fair dealing." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 18 (N.J. 1994).

86.     N.J.S.A. §§ 46:30B-42.1(h) requires businesses to refund consumers for the remaining balance on the gift cards if it falls below the threshold amount of $5.

87.     Target makes it a routine practice in New Jersey to refuse such refunds even when the balance on the gift cards falls below the threshold amount and violates the provisions of N.J.S.A. §§ 46:30B-42.1(h). In so doing, Target has acted in bad faith with consumers and has been unfair in its dealings with consumers by unlawfully denying them access to monetary resources to which they are legally entitled.

88.     The members of the New Jersey Class suffered damages, and continue to suffer damages, as a direct result of Defendant's conduct since they were denied access, in cash, for the remaining balance on their gift cards.

89.     The members of the New Jersey Class seek, as they are entitled to under N.J. Stat. Ann. § 56:8-19, actual damages resulting from Target's unconscionable conduct, trebled damages, appropriate injunctive relief enjoining Target from further engaging in this behavior, and reasonable attorney's fees.

## <u>COUNT VII</u>
## VIOLATION OF RHODE ISLAND DECEPTIVE TRADE PRACTICES ACT
## R.I. GEN. LAWS § 6-13.1-1
### (On behalf of the Rhode Island Class)

90.     Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

91.     This Count is brought on behalf of the Rhode Island Class.

92.     R.I. Gen. Laws § 6-13.1-1 prohibits unfair methods of competition and unfair acts or practices in the conduct of any trade or commerce are declared unlawful.

93.     R.I. Gen. Laws § 6-13-12 makes it an unfair business practice if, after the balance on a gift card falls below the threshold amount of $1 and the consumer requests a cash redemption for the remaining balance, the business issuing the gift card refuses the request.

94.     Target, by refusing cash redemptions for gift cards with remaining balances that fell below the threshold amount, is engaging in an unfair trade practice, thereby violating R.I. Gen. Laws § 6.13.1-1.

95.    The members of the Rhode Island Class suffered, and continues to suffer, damages as a direct result of Defendant's conduct by being denied access, in cash, to the remaining balance on the gift cards.

96.    The members of Rhode Island Class are entitled to recover the greater of actual damages or $200 pursuant to R.I. Gen. Laws § 6-13.1-5.2, an injunction prohibiting Defendant from further engaging in the unlawful, unfair, and/or fraudulent acts or practices as described above, reasonable costs and attorney's fees, and punitive damages awarded at the Court's discretion.

## COUNT VIII
### VIOLATION OF VERMONT CONSUMER PROTECTION ACT
### Vt. Stat. Ann. tit. 9, § 2453
### (On Behalf of the Vermont Class)

97.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

98.    This Count is brought on behalf of the Vermont Class.

99.    Vt. Stat. Ann. tit. 8, § 2704, in Chapter 081 of Title 8 of the Vermont Statutes, requires businesses to refund consumers for the remaining balance on the gift cards if it falls below the threshold amount of $1.

100.    Vt. Stat. Ann. tit. 8, § 2709 provides that any violation under Chapter 081 of Title 8 constitutes a violation of the Vermont Consumer Protection Act.

101.    Target, by refusing cash redemptions for gift cards with remaining balances that fell below the threshold amount, violated, and continues to violate, Vt. Stat. Ann. tit.

8, § 2704 and thus violated, and continues to violate, the Vermont Consumer Protection Act.

102.    The members of the Vermont Class suffered, and continue to suffer, damages as a direct result of Defendant's conduct by being denied access, in cash, to the remaining balance on the gift cards.

103.    Pursuant to Vt. Stat. Ann. tit. 9 § 2461(b), the members of the Vermont Class are entitled to recover actual damages, an injunction prohibiting Defendant from further engaging in the unlawful, unfair, and/or fraudulent acts or practices as described above, reasonable costs and attorney's fees, exemplary damages, and all other relief available under this section as deemed appropriate by this Court.

## COUNT IX
### VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT
### Wash. Rev. Code § 19.86 *et seq.*
### (On Behalf of the Washington Class)

104.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

105.    This Count is brought on behalf of the Washington Class.

106.    Wash. Rev. Code § 19.86.020 declares that any unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

107.    Wash. Rev. Code § 19.240.020(3) requires businesses to make available upon request, in cash, any remaining balance on a gift card if the balance falls below the threshold amount of $5.

108.    Despite this mandate under Washington law, Target makes it a routine practice in Washington to refuse such refunds even when the balance on the gift cards falls below the threshold amount, thereby committing an unlawful act under Wash. Rev. Code § 19.240.020.

109.    By engaging in an unlawful practice under Washington law, Target engages in an unfair trade practice under Wash. Rev. Code § 19.86.[10]

110.    The members of the Washington Class have suffered, and continue to suffer, damages by being denied access, in cash, to the remaining balance on the gift cards as they are entitled to under the law.

111.    Pursuant to Wash. Rev. Code. § 19.86.080, the members of the Washington Class are entitled to recover actual damages, an injunction prohibiting Defendant from further engaging in the unlawful, unfair, and/or fraudulent acts or practices as described above, reasonable costs and attorney's fees, and all other relief available under this section as deemed appropriate by this Court.

---

[10] Wash. Rev. Code 19.86.920 provides that:

> The legislature hereby declares that the purpose of this act is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition. It is the intent of the legislature that, in construing this act, the courts be guided by final decisions of the federal courts and final orders of the federal trade commission interpreting the various federal statutes dealing with the same or similar matters and that in deciding whether conduct restrains or monopolizes trade or commerce or may substantially lessen competition, determination of the relevant market or effective area of competition shall not be limited by the boundaries of the state of Washington. To this end this act shall be liberally construed that its beneficial purposes may be served.

## COUNT X
## BREACH OF CONTRACT
**(On Behalf of the Multistate Class or, in the Alternative, the State Classes)**

112.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

113.    This Count is brought on behalf of the Multistate Class or, in the alternative, the State Classes.

114.    Plaintiffs and the members of the Multistate Class enter into identical and binding form contracts with Defendant by accepting Defendant's offer to purchase Defendant's Gift Cards. A central term in this contract, which is drafted and offered by the Defendant, is the provision that "Target GiftCards cannot be redeemed for cash or credit except where required by law."

115.    In consideration of entering into this contract, Plaintiffs and the members of the Multistate Class pay, and the Defendant receives, money. Defendant breached this agreement by refusing to refund Plaintiffs and the members of the Multistate Class for the remaining balance on their gift card despite being required by law to do so.

116.    Plaintiffs and the members of the Multistate Class suffered damages as a direct and proximate result of Defendant's breach, including, but not limited to, being deprived of the full value of the gift card that they were promised.

## COUNT XI
## UNJUST ENRICHMENT
**(On Behalf of the Multistate Class or, in the Alternative, On Behalf of the State Classes)**

117.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

118.    This Count is brought on behalf of the Multistate Class or, in the alternative, on behalf of the State Classes.

119.    This Count is pleaded in the alternative to the breach of contract count above.

120.    Plaintiffs and the members of the Multistate Class conferred benefits on Defendant by paying money to Defendant for the gift cards.

121.    Defendant has knowledge of these benefits.

122.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and the Multistate Class members' Gift Card balances. It is unjust for the Defendant to retain these revenues because it failed to disclose to consumers that the gift card balances were not refundable under any circumstances, which is in direct contradiction with its representation that it would refund the remaining balances if required to do so by law.

123.    Defendant has also been unjustly enriched by their routine practice of unlawfully refusing cash refunds on remaining balances since the funds paid by consumers for that balance ultimately reverts to the Defendant.

124.    The benefits that Defendant derived from Plaintiffs and members of the Multistate Class were not offered by Plaintiffs and Class Members gratuitously and rightly

belong to Plaintiffs and Multistate Class members. It would be inequitable under unjust enrichment principles for Defendant to be permitted to retain any of the profit or other benefits wrongly derived from its unfair and unconscionable methods, acts, and trade practices alleged in this Complaint.

125.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs and members of the Multistate Class all unlawful or inequitable proceeds that Defendant received, and such other relief as the Court may deem just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all members of the Classes, respectfully request that this Court enter judgment in their favor and in favor of the Multistate and State Classes and against the Defendant as follows:

A.    That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiffs are proper class representatives; and appoint Plaintiffs' Counsel as Class Counsel;

B.    That the Court enter an order declaring that Defendant's conduct constitutes unjust enrichment;

C.    That the Court grant Plaintiffs and Class members permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein;

D.    That the Court award Plaintiffs and Class members compensatory, consequential, and general damages in an amount to be determined at trial;

E.    That the Court award Plaintiffs and Class members statutory damages, and punitive or exemplary damages, to the extent permitted by law;

F.    That the Court award to Plaintiffs the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

G.   That the Court award Plaintiffs and Class members pre- and post-judgment interest at the maximum legal rate;

H.   That the Court award grant Plaintiffs and Class Members all such equitable relief as it deems proper and just, including, but not limited to, disgorgement and restitution; and

I.   That the Court grant all other relief as it deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, individually and on behalf of the Classes, demand a trial by jury for all of the claims asserted in this Complaint so triable.

Dated: June 5, 2023                    Respectfully submitted,

**ZIMMERMAN REED LLP**

*s/ David M. Cialkowski*
David M. Cialkowski (0306526)
Behdad C. Sadeghi (0393374)
Charles R. Toomajian (0397879)
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0844
David.Cialkowski@zimmreed.com
Behdad.Sadeghi@zimmreed.com
Charles.Toomajian@zimmreed.com

Bryan L. Clobes (*pro hac vice* anticipated)
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
205 N. Monroe St.
Media, PA 19063
Telephone: (215) 864-2800
bclobes@caffertyclobes.com

Alex Lee (*pro hac vice* anticipated)
**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
alee@caffertyclobes.com

Joseph G. Sauder (*pro hac vice* anticipated)
Joseph B. Kenney (*pro hac vice* anticipated)
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, PA 19312
jgs@sstriallawyers.com
jbk@sstriallawyers.com
Telephone: (888) 711-9975
Facsimile: (610) 421-1326

*Attorneys for Plaintiffs*